UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————X
DEAN W. SANDERS,

                        Plaintiff,                    Docket No.:
                                                          05 CV 6385 (PKL)

    -against-

THE RITZ-CARLTON HOTEL COMPANY, LLC d/b/a
THE RITZ-CARLTON GOLF CLUB & SPA,
JUPITER, RBF, LLC, THE RITZ-CARLTON CLUB,
THE RITZ-CARLTON MANAGEMENT COMPANY,
LLC, THE RITZ-CARLTON DEVELOPMENT
COMPANY, INC., and MARRIOTT RESORTS
HOSPITALITY CORPORATION,

                        Defendants.
———————————————————————————X

## TRIAL BRIEF ON THE ISSUE OF THE ADMISSIBILITY OF THE PLAINTIFF'S PRIOR CRIMINAL CONVICTIONS FOR IMPEACHMENT PURPOSES

                                                        Respectfully submitted,

                                                        WHITE, FLEISCHNER & FINO, LLP
                                                        Attorneys for Defendants
                                                        140 Broadway
                                                        New York, New York 10005
                                                       Our File No.: 143-10958-D-PAF/DMS

*Paul A. Fino, Jr. (PF 2435)*
*Of Counsel*

## PRELIMINARY STATEMENT

In this slip and fall action arising out of the plaintiff's alleged fall on a purported dusty condition at the defendant's premises, the credibility of the plaintiff is the most critical issue in the case. He is essentially acting as his own "notice witness" to establish liability against the defendants, who maintain they possessed no notice, either actual or constructive, of any defective condition of the floor at any time prior to the plaintiff's alleged accident.

For the reasons discussed below, the court should admit into evidence, for impeachment purposes, the plaintiff's prior criminal convictions, because the convictions are for crimes involving dishonesty and false statement within the purview of *Fed. R. Evid. 609(a)(2)*.

## SYNOPSIS OF RELEVANT FACTS

The plaintiff commenced this action to recover damages for injuries he allegedly sustained on April 18, 2004, as a consequence of a slip and fall accident at the Ritz-Carlton Gold Club & Spa in Jupiter, Florida. While the plaintiff owned a time share in one of the units (Unit 111), that unit was unavailable, so he and his wife were staying in another unit (Unit 653) when the accident happened. The plaintiff and his wife were occupying the unit for a few days prior to the alleged accident. According to the plaintiff, when they first arrived and throughout their stay, he noticed dust on the marble floors. According to his sworn deposition testimony, he repeatedly made verbal complaints to unidentified Ritz-Carlton personnel and at least one complaint to Ritz-Carlton employee Ami Pool Thomas. In spite of housekeeping entering the premises twice a day to clean and turn the beds down, the dust remained on the marble floors.

It is defendants' position that the plaintiff did not slip/fall due to any "dust" or any other condition of the marble floors, but rather due to his own activities and physical condition.

Housekeeping used a computer system known as QIA database where all complaints made by phone, in person, or in writing were entered into the database. The database has no documentation whatsoever to indicate that the plaintiff and/or his wife had ever complained to any of the hotel staff about any condition concerning the floor in the unit.

Furthermore, Ami Thomas, the Director of Housekeeping, testified at her Examination Before Trial, that she recalled the plaintiff since he was a frequent complainer, but did not recall any complaints from either the plaintiff or his wife regarding "dust" in Unit 653.

Since actual or constructive notice is a required element of the plaintiff's case, the credibility of the plaintiff is the most critical issue in this litigation.

In addition to plaintiff's questionable credibility on the issue of notice, plaintiff has been less than candid during the course of his medical treatment and the instant litigation.

The plaintiff, Dean W. Sanders, is a 60 year old male with a history of morbid obesity, sleep apnea, diabetes mellitus, hypertension, hyperlipidemia, and a previous fracture of the left ankle in 1990 following a trip/fall.

While the plaintiff claims that he fell due to "dust" on a marble floor in the hallway next to the kitchen, the Court should consider that immediately after the incident neither the plaintiff, nor his wife told anyone that he fell due to "dust" on the marble floor.

1.     The Ritz-Carlton Security Medical/Injury Report:

"At 0530 hrs. on April 18, 2004 LPO Murphy received a call from Ms. Sanders at Club home 653. Sanders stated her husband had twisted or broken his ankle in the kitchen area. ...LPO Martinez assisted in the situation, the Jupiter Fire and Rescue arrived at 0545 hrs...... No foreign substances were found on floor. Sanders stated that he just fell." (Exhibit "A");

2.     LPO Martinez stated the following in his recorded interview: "So I asked him what happened and uh, she said that uh, he had gotten up to go to the bathroom and he had washed his hands and he was going back to the room. And had uh, stepped in water and uh, slipped and fell. Actually looked like he didn't wash his, like he didn't, uh, dry his hands. Uh, it looked uh, it was small drops. You could see uh, a little track going away from, uh, from the bathroom. Going away from where he had, was actually falling. Uh, there was dripping that he didn't, like uh, didn't dry the hand. I did look around..... Just the water." (Exhibit "B");

3.     Jupiter Medical Center Records, Jupiter, Florida on April 18, 2004: History of Present Illness (Exhibit "C"):

   a.     Dr. Bansal, "This is a 60 year old male who tripped over his other foot this morning";

      b.     Dr. Janin, "The patient claims that he got up this morning, went to the toilet, and on the <u>bathroom floor</u>, he slipped, fell and fractured his right ankle";

      c.     Dr. Banner: "This patient stated that he got up to go to the bathroom and slipped on the <u>bathroom floor</u> and twisted his ankle underneath him" (emergency room at 6:40 a.m.).

4.    <u>New City Orthpaedic Group Records, dated April 23, 2004 by Dr. Richard J. Kubik</u> (Exhibit "D"):

Reason for Evaluation: "Injured right ankle when he tripped in Florida. Has x-rays and reports";

5.    <u>Certified Copy of Criminal Docket Entries for Case Number 86 cr 325 (CLB)</u> (Exhibit "E"):

In January 1987, the defendant was convicted after a jury trial of Conspiracy to Defraud the I.R.S., Income Tax Evasion and False Statements. He was sentenced to prison for 18 months and Ordered to pay a fine of $50,000.00.

Yet, in the Examination Before Trial of Dean Sanders, dated October 31, 2006 (Exhibit "F"), he gave the wrong date and minimized the conviction. At page 10, line 25, in the minu-script the following questions and answers appear:

      Q.     Have you ever been convicted of a crime?

    A.    Yes.

    Q.    What was the nature of the conviction?

    A.    Income Tax.

    Q.    What was the year of the conviction?

    A.    1997.

    Q.    Is that income tax evasion or something else?

    A.    Understatement of income.

6.    <u>The RICO Indictment (95 CRIM. 0066) dated January 25, 1995, at page 15, (Exhibit "G")</u> clearly shows that the plaintiff used alias names:

> 41. From on or about January 1, 1988, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, Dean Wilson Saunders, a/k/a "Adam," Adam Ross," "James Hundley.....".
>
> Yet in the Examination Before Trial of Dean Sanders, dated October 21, 2006, he testified in the min-u-script at page 8, line 9: (Exhibit "F")
>
> Q.    Have you ever been known by any other name other than by Dean Wilson Sanders?
>
> A.    No.

Bearing upon the credibility of the plaintiff are his prior fraud convictions.

In addition to his 1987 conviction, on September 5, 1996, plaintiff pled guilty to, and received a felony conviction for, violating Federal RICO statutes, specifically, *18 U.S.C. 1962(c)* ("pattern of racketeering activity"/participation in RICO enterprise) and *18 U.S.C. 1963* ("extortion, racketeering and threats"). For these 1996 criminal convictions, the plaintiff received and served a prison sentence of 51 months followed by a 3 year period of "supervised release". The plaintiff was also ordered to pay restitution in an amount exceeding $4 million. (Exhibit "H")

The RICO conviction arose out of an enterprise that was involved in the insurance business. The scheme served commercial livery companies, leasing companies, towing companies, rental car companies, limousine companies, and individual insureds in their efforts to obtain appropriate insurance coverage. To enable the enterprise to operate, and to generate profits, plaintiff Sanders and his co-racketeers participated in a variety of fraudulent schemes. These schemes included (1) the submission of fraudulent applications to the Department and NYAIP; (2) the submission of invalid insurance documents to HHC; (3) the submission of fraudulent accident claims to insurance companies; (4) the diversion of insureds' premiums to the enterprise; (5) the overcharging of premiums to the insureds; (6) the issuance of fraudulent insurance documents to insureds; (7) the submission of insurance applications to insurance companies that misrepresented the nature of the risk insured; (8) the failure to pay premiums on insurance policies that had been issued resulting in the cancellation of the policies; and (9) the concealment of these schemes from the insureds.

In accordance with the terms of his sentence, he was released from prison in December of 2000, and the termination of supervised release was June 13, 2002.

## LEGAL ARGUMENT

**POINT I**

**PURSUANT TO *F.R.E. 609(a)(2)*, THE PLAINTIFF'S RICO CONVICTION SHOULD BE ADMITTED INTO EVIDENCE AT TRIAL**

Subsection *(a)* of *F.R.E. 609* ("Impeachment by Evidence of Conviction of Crime") provides:

> **(a)  General rule.**
>
> For the purpose of attacking the character for truthfulness of a witness,
>
> (1)  evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
>
> (2)  evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness. (Emphasis added)

While *Rule 609(a)(1), supra,* deals with convictions, generally, and permits the court to engage in a *Rule 403* balancing test (i.e., to compare the probative value of the conviction

against its prejudicial effect, and to exclude the conviction if its probative value is outweighed by its prejudicial effect), *Rule 609(a)(2),* which is specifically addressed to convictions involving "dishonesty and false statement" that bear directly on the witnesses credibility, and the likelihood that he will testify truthfully at trial, does not permit any discretionary balancing test; the admission of convictions involving dishonesty and false statement is automatic and mandatory. *United States v. Khalil, 2005 U.S. App. LEXIS 25426 (2d Cir. N.Y. Nov. 22, 2005)*[When *Rule 609(a)(2)* applies, the court may not engage in a Rule 403 balancing test in determining whether to admit evidence of the conviction.]

And see also, *United States v. Hayes, 553 F.2d 824, 827 (2d Cir. 1977), cert. denied, 434 U.S. 867, 98 S. Ct. 204 (1977)*[admission of a conviction involving dishonesty or false statement is "automatic"], *United States v. Payton, 159 F.3d 49, 57 (2d Cir. 1998), Fletcher v. City of New York, 54 F. Supp. 2d 328, (S.D.N.Y. 1999), United States v. Estrada, 430 F.3d 606, 2005 U.S. App. LEXIS 25680 (2d Cir. 2005)*[noting that the only difference between *609(a)(1)* and *609(a)(2)* is that "evidence of convictions for crimes involving 'dishonesty or false statement', whether felonies or misdemeanors, must be admitted under *Rule 609(a)(2)* as being *per se* probative of credibility, while District Courts, under *Rule 609(a)(1),* may admit evidence of a witness's felony convictions that do not constitute *crimen falsi* (crimes of dishonesty or false statement), subject to balancing pursuant to Rule 403."]

It is well settled that convictions for criminal fraud, tax evasion and embezzlement similar to the plaintiff's convictions herein, involve acts of dishonesty and/or false statement, that they are therefore "on their face" probative of credibility, and that consequently, pursuant to *F.R.E. 609(a)(2),* their admission into evidence is warranted. *United States v. Khalil, 2005 U.S. App. LEXIS 25426 (2d Cir. 2005), United States v. Yang, 887 F. Supp. 95 (S.D.N.Y.*

*1995), Commerce Funding Corp. v. Comprehensive Habilitation Servs., 2005 U.S. Dist. LEXIS 7902, 67 Fed. R. Evid. Serv. (CBC) 142 (S.D.N.Y. 2005)*[conviction for Medicare fraud had to be admitted at trial pursuant to *Fed. R. Evid. 609(a)(2)*]

In *United States v. Yang, supra*, for example, which was a criminal prosecution for money laundering, the State sought to introduce the defendant's two prior misdemeanor convictions for failure to file New York State income tax returns, i.e., tax evasion. According to the court, in failing to file state income tax returns, the defendant "intended to conceal his tax liability or deceive the government." The court therefore reasoned that the conviction involved a crime of dishonesty and as such, had to be admitted under *Fed. R. Evid. 609(a)(2)*.

Similarly, in *United States v. Klein, 438 F. Supp. 485 (S.D.N.Y.)*, where the defendant had a prior conviction for failing to file federal tax returns, the court held the conviction was admissible as a crime of dishonesty and false statement under *Fed. R. Ev. 609(a)(2)*. Although the defendant argued that his tax evasion crime was one of "omission rather than commission", and thus was not eligible for admission into evidence pursuant to *Fed. R. Evid. 609(a)(2)*, the court rejected this argument, concluding instead that the applicable test for admission under Rule *609(a)(2)* was "whether the conviction bore directly on the likelihood that the defendant would testify truthfully at trial". The court found that the tax evasion crime did indeed bear directly on the issue of the defendant's credibility and that consequently, it had to be admitted into evidence under *609(a)(2)*.

And in *Stone v. C.R. Bard, Inc., 2003 U.S. Dist. LEXIS 22035 (S.D.N.Y. Dec. 8, 2003)* the court referred to the Advisory Committee Notes to the 1974 Enactment of Subdivision *(a)* of *F.R.E. 609*, and noted from that that Congress intended in *609(a)(2)* to refer to crimes such

as "perjury, subordination of perjury, false statement, criminal fraud, … or any other offense in the commission of which involves some element of deceit, untruthfulness, or falsification ….".

The court then held "It is beyond cavil that the seventeen counts of mail fraud and eight counts of submitting false statements in the 1994 conviction are *crimen falsi* convictions" (i.e., crimes of dishonesty or false statement within the meaning of *609(a)(2)*). The court therefore concluded the convictions were admissible under Rule *609(a)(2)*, and further, that the court "need not, and in fact is prevented from, engaging in a Rule 403 balancing inquiry with respect to those counts from the 1994 conviction".

And see also, *Sango v. New York, 1989 U.S. Dist. LEXIS 18214 (E.D.N.Y. June 16, 1989)*["Sango's attempted petit larceny conviction arose out of the passing of a bad check, a crime involving falsification and deceit. Hence, both that conviction and his conviction for attempted criminal possession of stolen property fall within the ambit of Rule 609(a)(2), which, as the notes elaborate, is intended to reach crimes such as " . . . false statement, criminal fraud, . . . or false pretense, or any other offense in the nature of *crimen falsi*, the commission of which involves some element of deceit, untruthfulness, or falsification" bearing on the witness's propensity to testify truthfully. Fed. R. Evid. 609"]

In the case at bar, plaintiff's 1996 RICO conviction should be admitted into evidence under *Fed. R. Evid. 609(a)(2)*, without any consideration of its potentially prejudicial impact; the conviction involves crimes of dishonesty and false statement that bear directly on the plaintiff's credibility. Plaintiff's conviction involved extorting money from insurance companies and individuals by engaging in a pattern of fraud and deceit, as well as untruthfulness and falsification/fabrication of documents. The plaintiff's efforts in this

regard were highly calculated and ongoing, and were activities that are quintessentially in the nature of "*crimen falsi*", i.e., crimes of dishonesty and false statement embraced within the scope of *Fed. Rule of Evid. 609(a)(2)*.

**POINT II**

**THE PLAINTIFF'S 1996 AND 1987 CRIMINAL CONVICTIONS ARE BEYOND THE PURVIEW OF THE RULE *609(b)* "STALENESS" PROVISION**

Federal Rule of Evidence *609(b)* is intended to preclude, except in exceptional circumstances, evidence of old convictions, as they are deemed to have little bearing upon the present-day credibility of the witness. Under this section, "stale" convictions are only admissible if the court determines, in the interests of justice, that the probative value of the conviction "substantially outweighs its prejudicial effect." *Fed. R. Evid. 609(b)*.   It states:

> **(b)    Time limit.**
>
> Evidence of a conviction under this rule is not admissible **if a period of more than ten years has elapsed since the date of the conviction <u>or of the release of the witness from the confinement imposed for that conviction, whichever is the later date</u>**, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

## POINT III

### EVEN ASSUMING, *ARGUENDO* THAT THE CONVICTIONS WERE STALE, THEY ARE NEVERTHELESS ADMISSIBLE UNDER RULE *609(b)*

In exercising its discretion to determine whether an old conviction within the ambit of Rule *609(b)* should be introduced into evidence at trial, a court must consider a number of factors, such as "the nature, age and severity of the crime and its relevance to the witness's credibility, the importance of credibility as an issue in the case, the availability of other means to impeach the witness, and whether the witness has "mended his ways" or engaged in similar conduct recently." *Sango v. New York, 1989 U.S. Dist. LEXIS 18214 (E.D.N.Y. 1989)* It is well settled that "Crimes which involve fraud or stealing 'reflect on honesty and integrity and thereby on credibility.'" *United States v. DiLorenzo, 429 F.2d 216, 220 (2 Cir. 1970), cert. denied, 402 U.S. 950, 91 S. Ct. 1609, 29 L. Ed. 2d 120 (1971).*

It is equally well established that convictions for crimes involving fraud (like the plaintiff's RICO and tax evasion convictions), even if they are stale, should be admitted pursuant to *Rule 609(b)* because they "inherently involve dishonesty". *United States v. Nachamie, 101 F. Supp. 2d 134 (S.D.N.Y. 2000),* United *States v. Brown, 603 F.2d 1022 (1st Cir. 1979), United States v. Gilbert, 668 F.2d 94 (2d Cir. 1981), cert. denied, 456 U.S. 946, 72 L. Ed. 2d 469, 102 S. Ct. 2014* [Second Circuit upheld the admission of a prior mail fraud conviction that was more than 10 years old because the district judge had properly found that its probative value substantially outweighed its prejudicial effect against the defendant.], *3 J.B. Weinstein & M. Berger, Weinstein's Evidence P609[07] (1988).*

In the personal injury case of *Zinman v. Black & Decker (U.S.), 983 F.2d 431, (2d Cir. 1993),* the Second Circuit upheld the admission of the plaintiff's more-than-ten year-old conviction for Medicare fraud. In ruling the plaintiff's conviction admissible, the court noted

that making a false statement to a government agency is a crime akin to perjury, that it is a crime involving deceit, and that the conviction therefore bore heavily on his credibility.

The court further recognized that the jury's assessment of Zinman's credibility was highly relevant to several disputed issues in the case, including (1) whether Zinman's claimed physical injury made it impossible for him to continue to practice podiatry; (2) whether Zinman had discontinued his podiatry practice solely because of the injury; and (3) whether, but for his injury, Zinman intended to continue to practice podiatry until age 70. Ultimately, based upon its consideration of all of the relevant factors, the court elected to admit the conviction evidence based upon its conclusion that any resulting prejudice to Zinman was substantially outweighed by the probative value of the evidence.

Similarly, in the case at bar, the plaintiff's earlier 1987 criminal conviction, even if "stale", should be admitted into evidence because it is probative of the plaintiff's testimonial trustworthiness and credibility; it is a conviction involving calculated dishonesty and deceit, fabricated and false statements, and they reflect the plaintiff's willingness to lie when doing so will inure directly to his pecuniary benefit.

The plaintiff's credibility is the most critical issue in this litigation. The probative value of the plaintiff's convictions substantially outweighs any potential prejudice to the plaintiff. Consequently, even if the convictions were stale (falling within *Rule 609(b)* as opposed to *Rule 609(a)(2)*), they are nevertheless admissible at trial for the purpose of impeaching the plaintiff.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully request that the court admit into evidence, for impeachment purposes during the cross-examination of plaintiff at trial, the plaintiff's 1996 RICO conviction and 1987 income tax evasion conviction.

Dated: New York, New York
       May 2, 2008

Respectfully submitted,

WHITE FLEISCHNER & FINO, LLP

_____
By: Paul A. Fino, Jr. (PF 2435)
Attorneys for Defendants
140 Broadway
New York, New York 10005
(212) 487-9700
Our File No.: 143-10958-D-PAF/DMS

STATE OF NEW YORK    )
                    )ss:
COUNTY OF NEW YORK  )

*Lauren Riccio Meltzer*, being duly sworn, deposes and says:

That I am not a party to the within action, am over 18 years of age and reside in Brooklyn, New York.

That on May 2, 2008, deponent served the within Trial Brief on the Iissue of the Admissibility of the Plaintiff's Prior Criminal Convictions for Impeachment Purposes, by hand delivery:

TO:

PAUL J. EDELSTEIN
THE EDELSTEINS, FAEGENBURG & BROWN LLP
61 Broadway, Suite 2210
New York, New York 10006
212-425-1999
Our File No. 832/04/04

**Lauren Riccio Meltzer**

Sworn to before me this
2nd day of May, 2008

*Notary Public*
DANIEL J. STEWART
Notary Public, State of New York
No. 02ST5078049
Qualified in New York County
Commission Expires May 19, 2011